Your honors, first case in the morning, call 212-0660, Marjory C. Hahn, successor trustee to the Hahn Trust v. County of Kane International Combustion, LLC. On behalf of the Hahn Trust, Mr. Joseph Sauber. On behalf of the International, excuse me, Internal Combustion, as I believe, Ms. Kimberly Deschano. On behalf of the city of St. Charles, Mr. Philip Luekehans. Thank you. Mr. Sauber, you may proceed. May it please the court. I trust you've all read the pleadings, read the affirmative defenses. You know it's the position of the Hahn Trust that if you read those, apply your common sense, apply your knowledge as a lawyer, as a trial judge, as a justice, that those affirmative defenses plead one cause of action or one fact basis for the cause of action. That fact basis is the signing of the special use permit, special use application, excuse me. We also know that that special use application. I thought I read the briefs and I thought that the response was that wasn't their position. So we've also read the record. Right. But what I'm sorry, what isn't their position that it wasn't just the signing of the application of the use, that there were other facts and factors that would indicate that Mr. Cook knew what was going down long before he objected. Correct. And the trial court made that finding. Correct. So to argue what you're arguing really is, it appears to be contrary to the record and you probably should spend your time on more important things, which oral argument is supposed to more importantly be addressed to our concerns because we see conundrums or issues that parties don't raise. Maybe they do it intentionally or unintentionally. You did not ask in the alternative for damages at law. Is there some reason for that? We believe we're entitled to an injunction when there's an intentional invasion of a person's properties, right? The courts have always found an injunction is the appropriate remedy. Never has the courts awarded money damages in that situation. So is the finding the trial court made that there's an adequate remedy at law, is that mooted by the fact that you are not seeking any such relief? I would say correct. Okay. But I'd like to get back to the pleading point because I believe it's very important that the courts have always held that you must prove what you believe to be the case. I believe that is the easiest point for the court to address and the point that if addressed would mean a reversal of the trial court. To get to maybe more substantive things would be the issue of waiver. Waiver always requires the defendant to be engaged in the conduct for which the plaintiff claims is the invasion of the property rights or the breach of the contract. No lawsuit is ever brought until the defendant is doing that which he wasn't supposed to be doing, either breaching the contract or, in our case, invading our property rights. Until that takes place, there is no lawsuit. When the defendant raises waiver, in every instance he raises it, it's because I've been doing this for so long with the plaintiff's acquiescence that it's now unfair to make me stop or to impose damages on me for this. In this case, the wrong that we're attempting to stop is IC's and the city's use of our property, which they have no right to use. And the county certainly could not give them that right, and we did not give them that right. They were never engaged in that activity prior to us bringing the lawsuit, so there's no waiver is simply not applicable. The way you describe waiver is similar to the way the affirmative defense has described waiver, which really isn't waiver. It's a stop. Waiver is the intentional relinquishment of a known right. I agree. Okay. And where's the intentional relinquishment of a known right here? That's my question. Either expressed or by implication. Well, now you've agreed with the trust. But here's my question to you, though. Even though it's captioned waiver, if it sets out estoppel, we're not supposed to look at the caption. We're supposed to look at the content of a pleading. Okay. So, I mean, what you just described is really, I think, what they describe, especially IC, in their affirmative defense that they label waiver, it's really an estoppel, is it not? If you look at IC's affirmative defenses, they're all basically identical except for the last sentence where they claim all this conduct now is waiver, or estoppel. All this conduct is now latches. All this conduct is now unclean hands. So what I'm actually saying to you is that all of them are saying the same thing. And what they're all saying is that the high trust waited too long to object to our use of it. That's what it all boils down to. Whether you look at that as waiver like they're alleging it, estoppel, or latches, it's all the same thing. And under all of those theories, never has a court said they are applicable in a property rights situation when there is no use of that property or possession of that property. The Supreme Court has directly spoken on that point in Crowley v. Methodist Book Concern. And where that was raised by the defendant, that the plaintiff is guilty of latches. And what the Supreme Court says, no, latches doesn't apply to someone who's in possession of their property. Latches only applies if you're not in possession of your property. In this case, you have that, we are, the high trust is not out of possession. I see in the city are not using their property. Latches is simply not applicable. Once you get to the point that latches... You say that you're in possession. I was under the impression that the county had an easement that virtually laid waste to your property, such that it was reduced by the township assessor to zero valuation. And so this is kind of an unusual circumstance where you're claiming that you have some sort of beneficial use in the land when, at least for purposes of determining what the value of the real estate is for an arm's length transaction of a sale, trade, whatever, an exchange, it has zero value. No, it has zero value, Your Honor, for real estate tax purposes. That is a whole different issue than what it's actually worth. They don't. Okay, what is it actually worth? Whatever someone would pay for it, obviously. We're not interested in selling it. So it has no value as long as you don't want to sell it. It has no value for real estate tax purposes. So if I decided that I wanted to buy a house and not sell it for 50 years, I should be able to get an exemption on the basis that since I don't want to sell it, it's not worth anything, and therefore it should be assessed at zero. No, the property values are based on the use of the property, what the property can be used for. And what can it be used for? At this point, nothing. But under our contract, we gave them an easement, and we didn't give them a fee for the specific purpose that we could move that easement in the future and sell that land and recapture its value. That is why we didn't sell them a fee. When you say you could move that easement, the easement that was granted to the county? Correct. And you could move it, that's in the contract? That's in our contract with the county, absolutely. So you could move it wherever you wanted to make the land usable or to put it on the market? Correct. It's frankly a holding ground where they put their stormwater. Well, that would indicate that there probably is an adequate remedy at law, then. If you're saying that you could put some valuation on it. Absolutely. There is an adequate remedy at law. Would you try to do it in a settlement letter? $400,000, is that where that figure came from? I don't know if it was ever in a letter. No, there was no settlement letter. Just in discussions? Just in discussions. But the fact that real estate is bought and sold every day and it's a commodity and a value can be put on it does not mean now we have an adequate remedy at law. It has never meant that. The adequate remedy at law is when it doesn't apply when you have this continuing trespass. Defendants. Isn't there a line of cases, though, if somebody builds a house like two inches over onto your property that's a continuing trespass that courts haven't made the people knock their houses down? Absolutely. I would encourage the court to read the Brinkley case that I have cited to it. They go into that. When there's an unintentional invasion of a person's property right, they put the house where they thought they owned it. The surveyor got it wrong. It's over a foot over or two inches over. And the owner of the property wasn't aware of it until after the house was built. The courts have said, hey, it's unfair. The cost of moving the house compared to just having to sell two feet of land or whatever it is means the remedy should be, in fairness, just make them buy some property from you to remedy that situation. That has never applied. Never. When the invasion is intentional. We told them do not come on our property. You have no right to. You told them that in 2010. Correct. Before they were on it. Well, before they were on it, but Mr. Cook had conversations. There was a letter that should have put Mr. Cook on notice that the intent was to use the detention pond. That I see is that their intent was they were going to use the easement or the existing structure and improve it. Correct. And then you wait until 2010 to object. That's what I view it. Is that what happened? In essence, that's true. Now, let's go through it, though. That sounds like waiver to me. But they're not using our property. Let's remember, first off, we have a contract with them, with IC. In the contract, it says we're selling you this eight acres. That's all we're selling you. There's no other agreement. There's no other understanding. There's no other inducements. That's kind of a statement to them of what they're getting. Now, they're saying, but during the due diligence period, we put you on notice that we were negotiating with the county to use their easement. Okay. Mr. Cook obviously said, I don't recall that. I didn't know about it until 2010. Yes. Okay, fine. The trial court ruled. Pardon? That's credibility determination. The trial court ruled against you. Got it. Now, our intention is to use the county. We knew that. Taking the trial court that we knew that was their intention. Why would we know that they didn't know they still needed our permission? They needed the permission from the county because it was their easement. They needed our permission as a landowner. They had just gone to step one. Well, it's not one. They were mistaken. Correct. But they still needed our permission. We can presume they know the law. We can presume they know our contract says we own the real estate where the easement is. We own the county. We're selling it. We have a contract that says you're only getting this eight acres. You're not getting to use our easement. The other thing, they never asked, remember? They never came and asked us to use it. The other thing, if you look in the record, there's all this stuff about Mr. Cook having knowledge of their intention to use it. After the county gave them permission, no one ever told Mr. Cook that. There's nothing in the record to indicate Mr. Cook was ever told the county gave permission. That it apparently gave, they claim, in December of 2006. I claim they gave in May of 2010 after we objected. So you're selling this property to these people, and you know, again, according to the fines of the trial court, you know that they want and need to use this detention area. And you sit back saying they need our permission, but we're not going to say nothing. We're just going to sell it to them, and then we'll object later. Is that what you're saying? Absolutely not. First off, you can't say that we know that they have to use our detention or they need to. That's just not true. We know that even if you look at the letter that was sent to Mr. Cook requesting the extension of the due diligence period, it references going west or using property west, which is an option they would not like. But it doesn't mean they have to use the counties. If you look at the testimony of Jeff Miller, they were looking at four other options the whole time. And they can still to this day use their own property. This was just one option to them. During the due diligence period, all the focus wasn't on getting the use of the counties easement. There was all sorts of issues going on. This was just one. And they had remedies. There was no way to say that had they not gotten the counties, they had no place to put their water, if they weren't using the county's detention easement. They've got enough land to use. We know that. Their engineer admits it. He admits it even cheaper to use their own land. Didn't Bill testify more specifically, though, that they wanted to use this particular detention area? I'm sorry. Bill, didn't Bill testify? Ronald Bill, the real estate broker for Resnick. No. He didn't testify more specifically? No. That they needed this, they wanted to use this? I don't recall any such testimony as that. Mr. Bill's testimony is that he testified about having a conversation with Mr. Cook in which Mr. Cook said that the county can't charge you to use its easement. I thought Bill testified that in answer to the question, what did Cook say in response, he said that they had an agreement to utilize that detention and they would only have to pay the costs of making it usable. That detention, that detention area. This was in mid-July of 2006. Okay. And this was a conversation that apparently Bill had with Cook that the trial court certainly could have relied on in making its findings. Right. And that was way before 2010. Correct. When was the property sold? December of 2006. So it was before he went to sale? Yes, it's during the due diligence period. That's why I'm talking. I mentioned that. All this conversation with Mr. Cook all takes place prior to the sale of the property. After they get permission from the county, they never come back to Mr. Cook and say, well, we got the permission from the county to use the easement, now we want to go forward with the purchase. We were never told they had permission from the county. Nothing in the record would indicate we knew they got that permission that they were seeking. And there's nothing in the record that would indicate that had they not got that permission, they couldn't go through with this deal. Permission to use that detention area from the county? Yes. Which is irrelevant because we found in Hon. 1 they had to get your permission. Correct. Which they should have known in the first place, we argue. Why would we know they shouldn't have known they needed our permission? I just want to ask you one other question. You argued something earlier that I didn't want to clarify. Are you saying that there could never be an estoppel until there's an intrusion on the land? Yes. Until there's an invasion of the property right, exactly. Estoppel would not exist. Because estoppel under that situation is just latches. And latches cannot exist until that is. No one's ever cited a case where it's happened. No one's ever cited a case where a waiver's been used, latches have been used, unclean hands have been used. Well, I mean, again, I don't think this is waiver, but let's say if it was waiver, and I specifically sign a form saying I'm allowing you to use this land, and you haven't done anything yet, and then all of a sudden you put the pipe on the land, and then I complain, well, you know, I would think that waiver would apply even before there was an intrusion. I agree 100% with you. Okay. Just so we're clear on this. Right. And I believe, and if you, that's just what the defendants thought our special use application, when we signed that special use application, that's what they're arguing, that was their point. When we signed that special use application, it was just like your Honor just said, it's like we said you have our permission to use our property for your stormwater detention. That's what they equated that special use application with. That's why they argued it in their firm defenses and only argued it. I have a question. Do you file a motion for substitution? Yes. Did you see the response or reply that was filed? Yes. Is there any comment you wish to make relative to the, I believe, a disclaiming race judicata or the law of the case should apply to the substituted trustee? Yeah. You understand that that's probably what the law is? Whether it's the law or not, it was never our intention to not step into the shoes of the, I mean, as I wrote the substitution, I made it a point to refer to the Robert Heinz Trust as plaintiff, defendant, cross, appellee, so that we were coming in completely as accurate. All right, Mr. Selber, thank you. You'll have time for rebuttal. Thank you. Mr. Lukiehans. Yes. May it please the court, counsel Phil Lukiehans on behalf of the city of St. Charles. Justice Burke, I would like to answer the last issue you kind of raised with Mr. Selber, and that is Mr. Selber keeps saying there is no case out there where anyone was waived to stop laches where there had not been an intrusion. That's absolutely false. You look at Getty's, which is the number one leading case in equitable estoppel. Getty's, there was no, the waiver, if you know Getty's, the waiver occurred pre-zoning change. And it was the question of where to put a fairway on a golf course. The plaintiffs in that case had actually been involved in where to put that fairway. Then when the fairway was put there, the balls from the fairway started intruding on their property. I think it was a farm or some sort. And they said, well, we can't farm it now because now the balls are intruding. But the waiver, the estoppel, the actions to the cause of the estoppel occurred well before that. So Mr. Selber's statement that no case has ever done that is just completely false. That was about golf balls, wasn't it? Yes. No golf balls in this case were there. Correct. Okay. So they are distinguishable. Every case is, if this case had a one-on-point, Your Honor, I'm sure we wouldn't be here so many times. I misjudged. We golfers. Yeah. What conduct or statements by the plaintiff did your clients, the defendants, IC St. Charles's, rely upon? Yeah, there was five. In good faith. There were five actions. Okay, let me finish my question. Oh, I'm sorry, Your Honor. In good faith or further after the easement for IC's benefit, what are they? Yeah, the five things that happened in this case that are the basis for either the estoppel, the waiver, whatever defense you want to use. The first one is plaintiff's own real estate broker contacts us and says, Hey, you can use the detention property that we are selling to the county for your detention. Where in the record does that exist? I think that was clarified. The secretary or the broker sent a copy of the plat that indicated the easement, right? Yeah, and it was a real estate broker, Linda Kost. I don't have the exact size of the record. What I'm suggesting is try to be as precise on the record what the record reflects. I think that was clarified in the reply brief. There was a plat sent that indicated the easement, correct? There was a plat sent that indicated the easement and an e-mail that was sent to the engineer for IC that said, my notes say that she presented the concept of utilizing the detention property or subject property for the detention on the property that the Hahn Trust was selling IC. That's one. That's number one. Number two is the Nieman letter that I think Justice McClaren discussed in June 2006. And Mr. Cook, who really is the main agent here, I don't think anyone has any doubt about it, his response, which doesn't dispute the ability to use that property. Third is IC's real estate broker, Ron Bild, had a conversation with Mr. Cook in July of 2006. The fourth was Brian Townsend from the city of St. Charles, I think he's the village administrator, has a conversation with Mr. Cook in August of 2006 where Mr. Townsend specifically says we're planning on utilizing this easement and we're negotiating with Kane County for that easement. And Mr. Cook, again, just lays there like the snake in the grass, doesn't say a word. And the fifth is in December 2006, and this is not something that the city can rely upon because it's after we took our action. Understand that between the August 6th and December 6th meeting, or August 06th and December 06th meeting, the city then enters into an IGA with Kane County to utilize this and has certain obligations thereafter, such as we have to permanently maintain this detention pond for the county, including their original detention. We take over detention and responsibilities for maintenance for the entire thing. So that's really where our justifiable reliance comes in up to that date. IC then has a meeting with their engineers and Mr. Cook where the evidence showed, and I think Judge Mueller found this, that the main purpose of this meeting was to discuss this detention pond going on this property. That's early December 2006, December 6th actually. And then within weeks later, IC then closes on the property, pays Mr. Sauer's client $5.3 million. And I think it's important to realize that one of the reasons I would assume that they paid $5.3 million is because they were able to use, they weren't going to have to put stormwater on their own property. They were able to use another parcel so they could build more on the property. Are you raising these defenses of estoppel and waiver on the city's behalf, or are you really, is it more of an amicus on behalf of the city? No, I'm raising it on behalf of the city. The only one is the fifth one that is not the city. The Fifth Act, I was trying to make clear, is not something the city can rely upon. Because our reliance is in going forward with this Kane County IGA. At that point, our involvement kind of stops. Then later, I was just explaining all that. So it's not really the special use permit, it's the IGA that gives you some obligations under the IGA that you relied on these things. Correct. During, upon signing the IGA, we then have permanent maintenance of this entire detention pond, not just the additional detention. The entire pond is our maintenance responsibility for in perpetuity. Which is still in place. Yes. Well, it's, according to what Mr. Sauber said, it's not really in perpetuity. It would seem that it would only be as long as the easement was located in that location. Unless, of course, you've agreed that if it's moved, that you will in perpetuity maintain the easement wherever it's located. You're correct. It is not in perpetuity. The reality of it is, and I believe the testimony was, that there is no intention of ever moving that detention pond. That is very, very speculative. There's no statement that that detention pond will ever be moved. This isn't like moving, hey, I'm going to give you a parcel ten miles from here and it's going to work. As you well know, a detention pond, you've got to put it in a specific position, excuse me, a specific property that makes it work. You can't just say, I'm going to move it to the other side of the county where land is cheap. Well, what about utilizing the strategy of Elmer Chicago Stone that took a quarry, then used it for flood control purposes, and then used it as a landfill. So it seems like you can make money by digging a hole and filling it up. So why couldn't you do that here? Because you would have to find land that you could actually do that in the right plain downstream. You'd have to dig a real deep hole. You'd have to either dig a real deep hole downstream, you'd have to take piping that goes as far as it goes, because you have to take that specific stormwater. I mean, I've been involved in the Elmer Chicago Stone. They're a client of ours. I mean, as I know you have. I thought you were. I didn't recognize the name Chirac. Yes. We were involved in that. But that was a large flood control project. It was not a project for one specific stormwater parcel. And honestly, most of it was built before the new stormwater ordinances had come into place. It's a completely different instance. Obviously, that's a very unique situation. So before the ordinance, there was no such thing as stormwater? It was not to the extent it is now, and it has changed completely. Okay. I'm not sure if that's my time. What do you think about the adequate remedy of law? Do you think that it's now gone because it hasn't been joined? Say that again. I apologize. I don't understand the question. The trial court found there was an adequate remedy of law. Yes. Unless the plaintiff slash petitioner sought such relief, is that issue even relevant or material? Is it moot because having not requested such relief? If you're saying that there's an adequate remedy of law, what are the implications of saying that there's an adequate remedy of law vis-a-vis whether or not an injunction should be granted? Well, I think, first of all, if you have an adequate remedy of law, there is no injunction other than very specific circumstances. Okay. I will agree with you that the traditional concept is that if there's an adequate remedy of law, then if so factored, there's no irreparable harm. Correct. And, therefore, there's no reason for affirmative or prohibitive relief. However, the fact that there may not be an adequate remedy of law does not necessarily mean that you are irreparably harmed. It may be you're not harmed at all. And in this case, I think what's important is the cases that are cited by counsel are intentional intrusions on the property. We do not have an intentional intrusion case. The Calhoun case specifically says, if the defendant had been lulled into this action, then there's no longer an intentional intrusion. And this is the absolute case of being lulled into this action. These clients spent millions of dollars based on that lulling and, hence, had to take that action. The other thing is that one of the cases cited by Brinkley, the Supreme Court case in Kammers, talks about the fact that it is very unlikely, if ever, that this intrusion will ever have any effect on the property. That's what we have here. We have a speculative effect that sometime in the future, the plaintiff may decide to move this. They may decide that it's profitable to move. Correct. At some point, no one knows when or if. Okay. Can I just say, I think we have, if you look through the elements of that case now that we've met them, counsel doesn't really object to that in any real strength.  Thank you. Mr. Shano, you may proceed. Good morning, Your Honors. Kimberly Shano for Internal Combustion. As the city's counsel stated, it's very clear, based on the evidence, that there were multiple instances in which Mr. Cook, the only witness for the Hahn Trust, both waived and engaged in conduct that stops them from asserting their right to object to our use of this stormwater easement. I think Mr. Lutkow laid out all of those instances. And as Your Honors noted, the trial court weighed the credibility of the witnesses and found that all of this was established. Is this a staple or a waiver? In your affirmative defense, you had waiver, correct? It is entitled to waiver, Your Honor, you're correct. Is this a staple or is it waiver? It's both. And as Your Honor noted, the difference between the two is waiver focuses on the intention of the plaintiff, whereas a staple focuses on the conduct in reliance by the defendant. Both of those things exist here. There's evidence of the Hahn Trust's intent. This isn't simply a case about remaining silent. There was other conduct, explaining how we should negotiate with the county, coming to meetings. This wasn't simply getting a letter and not bringing it up. This was an entire year of helping, participating in the negotiations. That's where the intent comes from to establish the waiver. The estoppel is based on our reliance. We took significant actions, not just buying the property, negotiating with the county and the city, dedicating a portion of our property to the city as a road, and then eventually ultimately closing and constructing on the property. All of those actions are our reliance. Both of these things are established. In order to establish waiver, generally to establish waiver, you have to be able to point to a clear, unequivocal, and decisive act. Correct? That's correct, Your Honor. Here you're looking at a series of acts that you're suggesting, taken together as a whole, or the totality of those acts constitute waiver. Is that your argument? That's right, Your Honor. Waiver can be both asserted and it can be implied from conduct. We believe that it's both. There were, I think, Decisive acts and also Decisive acts in terms of signing the special use permit, as well as responding to the letter requesting the due diligence extension. Responding to a letter that clearly references that we are asking for permission from the county to use the detention and never mentioning your own permission, I think is an affirmative act as well as simply an implicit act. You filed a cross appeal, did you not? Yes, we did, Your Honor. What's the theory behind the cross appeal? Well, Your Honor, we had two other affirmative defenses, Lashes and Unclean Hands, and the trial court found that these were not established. We think that was an error. Lashes is also a form of establishment. Why would you have to file a cross appeal if all you were attempting to do was to sustain a judgment on another theory that was before the trial court? Well, Your Honor, that's a good question. In reality, we would only have to get to our cross appeal if Your Honor reverses the findings on the other two defenses. And if for some reason those were reversed, then we would have additional grounds for refuting. You can affirm on any basis in the record. You could have just argued that in your brief, couldn't you? That's true, Your Honor, and we do believe that the evidence also established Lashes. The same instances that the city outlined and that we have outlined in our brief also established Lashes. And I'll point out that the plaintiff doesn't, again, object to any of these facts but really raises this issue that these can't apply in the property rights context. That's not really the issue. Obviously, they have a property right. But the property is, as one of Your Honors noted, overlaid with an easement. So that is a contract right. And the real right that's being waived or that they're being stopped from asserting is their right to consent to use of that easement. They could have consented. That's the right that is at issue. This is not a trespass claim. This is not a property invasion. It's really about a contractual consent right. And so that is subject to all of these equitable defenses. There are cases that establish Lashes, Estoppel, and Waiver applying to injunctions related to easements and to the right to enforce the easement. And we've cited all of those in our brief. How can we read the affirmative defense outside of the special use proceedings? It seems to be couched in terms of the special use. Your Honor, the defense reads that after it lays out the details of the special use that even after participating in that process, the Hahn Trust took actions that led my client to believe that they were giving their permission. Also, there was significant discovery responses that laid out conversations between Mr. Build and Mr. Cook and Mr. Niman and Mr. Cook, all of which were established at trial. The cases are clear that you do not have to lay out all of your evidence. You made a general allegation regarding Mr. Cook, correct? Yes, we did. That it was his actions, including, I believe the comment was it went after the special use process. And that is when these other conversations with Mr. Niman and Mr. Build took place. And so it really is, again, this entire year of conduct and not just that limited example. We also have an affirmative defense of unclean hands, which I know is somewhat unusual and not particularly often used. However, in this case, we do believe that, again, the accumulation of this conduct rises to the level of unclean hands. This really was bad faith. Mr. Cook, as Your Honor has noted, had several opportunities where he knew exactly what IC was planning to do, that we were undergoing these significant, difficult negotiations with the county. That was the whole point of Mr. Build's comment. If you didn't raise unclean hands in the trial court, why are you raising it here? We did, Your Honor. It was pled. Did you plead slumbering on one's rights as well or not? I'm sorry, say that again? Plead slumbering on one's rights as well. We pled, yes, we pled lashes. We also pled unclean hands. And we did brief all of those to the trial court, and the trial court chose not to enter judgment on those. Lashes and slumbering on one's rights are not exactly the same. That's correct, Your Honor. I think lashes requires an injury or reliance that perhaps sleeping on the heart. It usually requires some precipitous moment in time that supposedly will alter the timeline and prevent or create an injury that cannot be easily resolved. Yes, Your Honor, and that injury here would be our closing on the property. All of these things, we did not close until we thought that this issue was resolved. And Mr. Cook acknowledged that he knew that, and he knew that's why we were extending the due diligence and the closing dates. And, in fact, it wasn't until that last meeting in December with the county that Mr. Cook was present at that the closing was actually scheduled. Why did you file an objection or reply to the motion to substitute the plaintiff for the petitioner? Your Honor, it wasn't clear in the motion why the parties were being substituted. And given that there were so many factual underpinnings in the trial court's finding, we wanted to clarify that there would not be an argument from the plaintiff that they were not bound by those because they were a new party. That was the only issue. Now the plaintiff has acknowledged that, I'm glad that we can at least agree on that issue. Thank you. The other two points I want to address is, and Your Honors have focused on this as well, this is a claim for an injunction, and not just a negative injunction, but for mandatory relief. They're not just asking us to stop draining on their property. They're saying, stop draining on our property, remove your pipes, fill in the part of the additional detention that you dug out. That kind of mandatory relief requires significant both pleading and proof that simply aren't here. And it's not an appropriate request to make to an appellate court as a matter of relief anyway. My client has already set up... If they ask that the trespass cease and desist and return it to the same state it was prior to the trespass, what else would they have to say? Well, Your Honor, I believe that the most they could say at this point is to stop the drainage. I don't believe that they've established enough to force a mandatory relief, especially to force mandatory relief coming from this court. Will the stormwater go upon their property if the pipes are removed? It will. It will not go on in probably the same volume or flow. But it has. That's the natural flow of the water. I think that was addressed in the last appeal before this Court. Thank you. On that note, we just urge the Court to find that the trial court's exercise of discretion in awarding judgment on the two affirmative defenses is correct and to also award judgment on the remaining two that were pled. Thank you, Counsel. Mr. Saliver, rebuttal argument. Thank you. To begin, Counsel is correct that we absolutely seek this Court to enter an order or at least to remand with directions an order be entered that the defendants be enjoined from using our property except the county pursuant to this grant of easement and then return our property to its original condition. That is the condition it was in prior to any work being done on it by internal combustion. And we seek that order against all of the defendants, not just internal combustion, because it was all defendants that were in this together that put their pipe and took our soil. Would the county be entitled to dig a hole as big as it is right now on its own? No. The county only gets an easement right up to its limit of its needs, to its full enjoyment. Well, that's not exactly the same thing as saying that the hole has to be filled in because if the pipes are removed and the hole remains the same, then from what I gather, the only water that will fill it is from the county and its environs and from runoff from the car dealership. Sorry to interrupt. And why would that require that you fill in a hole? Because when we go to move that easement in the future, we should only have to put 11 acres of soil back in there, not 15.6. That is a burden on us that doesn't exist otherwise. I'll buy that argument if and when you ever do that. But if and when you ever do that, if the county is using the entire hole, then I think your argument lacks weight. You are correct. But if you look at the record, the county says it has full use right now at 11 acres. It may need more in the future. That would be 1.6 acres. And that's why it was expanded to 5.6 acre feet, 4 acres for the city. Well, this is really speculative as to whether or not it's actually going to be used to its fullest extent or not, and that would determine whether or not you supposedly would be entitled to some sort of compensation that would not otherwise be under the contract. Under the contract, we have the right to move it. There's no compensation provided in the contract. Okay. Let's say they dig a hole to China, and it just so happens that they need that hole because for some reason water out of some sort of underground spring seems to pop up along Randall Road. And since it's a natural circumstance and you decide you want to move the easement, you're going to have to deal with this artesian spring that supposedly has now popped up. And if supposedly the land or the hole that has to go to China needs to be there in order to take care of the artesian spring and you want to move it, you're not going to be able to charge the county to fill up the hole all the way to China because supposedly they used it for their needs. Do you understand that? I honestly don't, but I understand that if we move it, we have to fill the hole. We'll have to fill the hole they made, but the hole they made is no bigger than the hole they need. And that's my point. You won't know until you decide to move it whether or not at the time you move it that was the size of the hole that they needed at that time. If at the time you decide to move it, it's two acre feet bigger than it should have been, then maybe the county might be liable for two acre feet of dirt. But if they supposedly use the entire amount and you have to move it, they shouldn't have to pay you because they are in fact using those excess two, five, ten, or 15 acre feet if they decided to dig a deeper hole. That's correct. Okay. And I said this is very speculative. We really should get on to other things. Right. Can you respond to the counsel's argument that Getty's is an example of a case? No, Getty's is not a very good example, ignoring the golf balls. In Getty's, the plaintiff was trying to tell the defendant what to do with his property. They were starting to say, you can't do this with your property. You can't have a golf course hole here that runs along mine because the balls come on it, despite the fact that that's where you wanted us to put it. We said we could put houses here, and you said, no, we don't want houses next to our property. We prefer the golf course. Now you come back and tell us you don't want the golf course there because of the balls coming on it. But the bigger thing with Getty's, remember, the owner, the plaintiff, isn't saying, get off my property. She's telling, she was telling the developer, Shodin, to move your golf course, telling him what to do with his property. That's what they tried to do. That isn't applicable here at all. In this situation, they're trying to tell us they have a right to use our property, and that we can't tell them to get off our property. And this isn't just putting water on it. Come on. It's a 3.2-acre parcel of property in which they moved 5.6 acres of land and laid up to 260 feet of pipe. This isn't just an easement. They're treating this as if they own it. They've taken over our property. I want to quickly get to an example for you. Let's presume you're a developer, and let's presume you own a 200-lot development, and someone comes along, and you sell them lot 150. And right next to lot 150 is lot 151. After you sell them lot 150, you notice the guy is building a garage or a shed or something on the next door lot, 151. You sold them lot 150. You go to him, you say, what are you doing? Stop doing that. You can't build on that lot. You don't own that lot. He goes, what do you mean I don't own it? I know I don't own it. I bought lot 150. But when I bought lot 150, I told you I was going to put my garage on lot 151. Our realtors discussed it. I discussed it with your realtor. Everybody knew I was going to put my garage on lot 151. The developer says, whoa, whoa, I never knew that. What are you talking about? I never knew that. He goes to enjoin them, right? What does the court say? If this court affirms the trial court, every one of those cases would have to go to trial. Every one of them. You would never be able to sell a lot in a subdivision because when you bought one lot, you could claim I bought it only with the intention to use the lot next door. How would you stop me from that from happening? I'll tell you how. 137 fees? Excuse me? 137 fees? In other words, it's a frivolous lawsuit. But you don't know it's a frivolous lawsuit until you get to trial. And what if you get to trial and the developer says this? You don't know whether it's frivolous until you supposedly get to discovery. But let's say you get to discovery. And the judge can still, in this case, Mr. Cook said I never knew about it. The court found against him. The evidence they're giving you of how he knew and all this is a lot weaker than they make it. During Mr. Shano's argument, I could not help but notice that you were shaking your head. Sorry, I talk to myself a lot, too. That's disruptive. But you were shaking your head and you did it a lot. But I'd like you to address what was inaccurate that she was saying that you were shaking your head regarding Mr. Cook's knowledge. Because I think it was during that period. So I'd like to hear your response to that. That meeting that they make, the meeting they make such a big deal about, that December meeting. And the big deal they make about it is when their agent, Jeff Miller, comes and testifies, I remember the main thrust of that meeting being the discussion of us using the high-trust property. Well, there's minutes from that meeting. They didn't get into the record, but they existed. I questioned him on those minutes. Nowhere in those minutes is there ever any mention of what he claims was the main thrust of that meeting. And that brings up the point that I raised earlier with you. Credibility determinations were made by the trial court. Right. So, again, you're arguing credibility, asking us to revisit. Well, it's just. You're asking us to revisit what the trial court ruled upon regarding Mr. Cook's credibility, correct? Is that really what this all boils down to, what Cook knew and when he knew it? Absolutely not. Because even if you find Mr. Cook knew that, that they intended to use it, how did he waive the right for them to have to seek his permission? How do you get past that? Well, he has to, for waiver to apply, he has to have some knowledge. Well, if he claims he did, he claims I never knew him. Now, again, the trial court found against him on that, that he did know. But he said he didn't. But we have a contract with him, and that's what I think really is the bigger issue. You resolve this by looking at the contract. What did Internal Combustion purchase? They purchased this eight acres. They clearly purchased nothing more. And they're trying to say, yes, we did. And you knew we were doing it. No, we didn't. We specifically contracted that you weren't going to do anything more than that eight acres. And you're trying to say. And they're trying to say, no, you also implicitly gave us the right to use this in direct violation of the contract. I think you've heard enough. Mr. Sauber. Yes, sir. Would this hypothetical seem more appropriate to the facts in this case, and that is, is that this builder who built or who sold a lot to the individual had allowed the party on the opposite side of the property to build a one-car garage, and then this individual adds on to that one-car garage and turns it into a two-car garage with a small shed add-on to lean to against the side of the garage for things such as bicycles and water wings and things like that. And then when push comes to shove, the person who's added on to the garage said, well, you told me that I could add on to the garage that supposedly you have given an easement to to the other party who lives on the other side of the property line. And then those are the types of lawsuits that we would be seeing running rampant throughout the courtrooms of this district. Does that not seem more appropriate than... Well, no. And the other thing is we told the guy before he started building the second car garage and started putting the lean-to and the place for the bikes in there, don't do it. And he says, no, I've already had permission. I wouldn't have walked a lot next door had I not done that. And I believe you get into that situation every time the court will look at the contract between the parties.  Thank you. I thank the attorneys for their honesty. This case will be taken under revisal. I'll take a short recess.